IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| **Autolube Group LLC**, | ) CIVIL ACTION NO. 2:13-2422-PMD-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| **Delfin Group USA LLC and** **John Gordon, individually**, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff asserting claims against the Defendant Delfin Group USA, LLC, and John Gordon, individually. This case is one of nine (9) separate cases filed against this same Defendant, all of which have been assigned to the undersigned United States Magistrate Judge.

The Defendant Delfin Group has filed a motion to dismiss Plaintiff's Amended Complaint on the grounds that Plaintiff has failed to set forth sufficient factual matter to state any plausible claim for relief.[1] Plaintiff has filed a memorandum in opposition to the Defendant's

---

[1]The motion has only been filed on behalf of the Delfin Group. The other Defendant, John Gordon, is alleged to be the former President of the Delfin Group; see Amended Complaint, ¶ 5; but apparently no longer works for the Delfin Group. According to a certificate of service filed with the Court, Gordon's spouse was served with a copy of the original Summons and Complaint in Lebanon,
(continued...)

1



motion, to which the Defendant has filed a reply. Defendant's motion is now before the Court for disposition.²

## Allegations of the Amended Complaint

Plaintiff alleges that it is a foreign corporation organized in the State of Georgia and doing business in Charleston, South Carolina, and that [a]ll discriminatory practices in the breach of contract alleged . . . were committed within the State of South Carolina" by the Defendant. Plaintiff alleges that it is a distribution company that distributes oil products to consumers, and that the owners of the Plaintiff are Armenian. Defendant is alleged to be a consumer of automotive oil

---

¹(...continued)
New Jersey, on March 3, 2014. See Court Docket Nos. 21-1 and 34-1. However, there is no indication in the file or on the docket that Gordon (or his spouse, assuming she is an acceptable person for receipt of a summons and complaint) has ever been served with the Amended Complaint, and Gordon has not made an appearance in this action, either pro se or through counsel.

Pursuant to Rule 4(m), Fed.R.Civ.P., "[i]f a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the Plaintiff - must dismiss the action without prejudice against that defendant . . . but if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Here, the time for service began to run on March 21, 2014, and the one hundred and twenty (120) day period for service provided by Rule expired on July 25, 2014. Therefore, unless Plaintiff has made proper service on the Defendant Gordon, he is subject to dismissal as a party Defendant. **Plaintiff is herein specifically advised and placed on notice that, in response to this Report and Recommendation, he is to provide the Court with proof of service on the Defendant Gordon, or present good cause to the Court for any failure to serve this Defendant, within ten (10) days of the filing of this Report and Recommendation. Failure to do so will result in Gordon being dismissed as a party Defendant in this case.** In the event Plaintiff has failed to serve this Defendant with service of process, but submits material to the Court asserting good cause for such failure, whether or not to accept Plaintiff's assertions of good cause shall be in the sole discretion of the District Judge in his review of this Report and Recommendation.

²This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



products.

Plaintiff alleges that on or about January 13, 2012, Plaintiff and the Defendant entered into a contract stating that the Plaintiff would be a distributor for the Defendant's products. A copy of this contract [Distributor Agreement] is attached to the Amended Complaint as Exhibit A. Plaintiff alleges that pursuant to this contract, the Defendant would provide Spectrol Branded Products, as well as any other products that were agreed upon mutually between both parties, to the Plaintiff for distribution in the State of Georgia. Plaintiff alleges that it agreed to the appointment as distributor and that all times complied with its agreed upon duties.

Plaintiff alleges that on or about November 2012, John Gordon became President of the Defendant. Plaintiff alleges that Gordon continually made racial slurs regarding Armenians, and that an employee of the Defendant (Robert Oroujian) informed the Defendant's Human Resources department that on or about August 14, 2012 he was present during a conversation between Gordon and John Laney, the Defendant's shipping supervisor, during which Gordon asked Laney: "Do you know how many medals Armenia won in the Olympics?", and then stated: "Three, for lying, cheating and stealing". Plaintiff alleges that Gordon "was informed about the complaints of racial discrimination",[3] following which he "set about to terminate Armenians working for [the Defendant]". Plaintiff alleges that Gordon, as the Defendant's "alter-ego", initiated a pattern of discrimination against Armenians, and "began breaching the contract by not supplying the Plaintiff

---

[3] While this allegation is not clear as to exactly what occurred, this Court can take judicial notice of the allegations made by Robert Oroujian in his own lawsuit that Oroujian complained to Human Resources about Gordon's allegedly racially offensive comments. See Oroujian v. Delfin Group USA, LLC, C.A. No. 2:13-2991. See also Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].



according to their agreement and discriminating against the Plaintiff due to the company's owners' race, Armenian".

Plaintiff alleges that it submitted an order for product to the Defendant, but that the Defendant did not fill the order, and that when Plaintiff contacted the Defendant about not receiving their order it was informed during a phone conversation on or about November 5, 2012 that "due to a pending government investigation by the Department of Commerce into the Plaintiff that they could not supply the Plaintiff according to the contract". Plaintiff alleges that it had never been informed about any government investigation, and that when it contacted the Department of Commerce, Plaintiff was informed that their company was in good standing and not under investigation, nor was their any reason the Defendant could not contract with the Plaintiff. However, Plaintiff alleges that even though they informed the Defendant that there was no investigation, the Defendant still failed to supply the Plaintiff with product according to the contracts. Plaintiff further alleges that it has "made repeated attempts to collect . . . sums due from the Defendant [ ], to no avail". Plaintiff alleges that because of the Defendant's refusal to honor their contract, the Plaintiff has lost all of their business "and third parties refuse [ ] to contract with them".

In its **First Cause of Action**, Plaintiff alleges a state law claim for breach of contract. Plaintiff alleges that the Defendant breached the contract between the parties by not complying with an order for product sent by the Plaintiff, and that due to that breach Plaintiff has lost business and sales throughout the state of Georgia. Plaintiff further alleges that the Defendant "not only entered into a written but also entered into a verbal agreement to supply the Plaintiff with Spectrol Branded Products, as well as any other products that were agreed upon mutually between both parties," and



that as a proximate result of the Defendant's breach of contract it is entitled to damages.

In its **Second Cause of Action**, Plaintiff asserts a claim for interference with a contractual relationship. Plaintiff alleges that the Defendant knew that Plaintiff had entered into contracts with various retailers in Georgia that required them to have Spectrol Branded Products available to meet their contractual obligations to the retailers, and that due to the Defendant's failure to provide Plaintiff with product needed to meet their contractual obligations, Plaintiff has suffered monetary damages as a result of the intentional interference with a contractual relationship which existed between the Plaintiff, the Defendant, and the Plaintiff's customers.

In its **Third Cause of Action**, Plaintiff asserts a claim for negligent misrepresentation. Plaintiff alleges that the Defendant, "acting through its officers, agents, servants, representatives, or employees, negligently and reckless[ly] misrepresented to the Plaintiff that the Defendant [ ] [was] going to supply the Plaintiff with Spectrol Branded Products, as well as any other products that were agreed upon mutually between both parties, to the Plaintiff for distribution in the State of Georgia . . . .". Plaintiff alleges that the Defendant owed a duty of care to see that truthful information was communicated to the Plaintiff, and that the Defendant breached its duty of care by failing to exercise due care when the Defendant failed to supply the Plaintiff with its products. Plaintiff alleges that the Defendant was at all times in the superior position with superior knowledge as to the contract issued to the Plaintiff, while Plaintiff was at all times in a position to rely on the contract, and that as a direct and proximate result of reliance on the Defendant's misrepresentations, and/or admissions, the Plaintiff suffered monetary damages.

In its **Fourth Cause of Action**, Plaintiff asserts a claim under 42 U.S.C. § 1981. In



this Cause of Action, Plaintiff asserts that it "is a member of a protected group on the basis of their race (Armenian)", and that it was retaliated against and the Defendant "breached their contract based on their race and color in violation of 42 U.S.C. § 1981". Plaintiff further alleges that the Defendant was wanton, reckless, and engaged in intentional discrimination by failing to promote or continue to abide by the contractual agreement due to the Plaintiff's race or color, by showing preferential treatment to non-Armenian distributors, and by terminating the contractual relationship between the Defendant and the Plaintiff in retaliation for reporting the discrimination to the Defendant. Plaintiff alleges that but for the "Plaintiff's race and color" the Defendant would not have breached the contract, and that it is therefore entitled to monetary damages.

Plaintiff seeks monetary damages, as well as unspecified injunctive or other equitable relief. See generally, Amended Complaint.

**Discussion**

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find defendants liable." Vogt v. Greenmarine Holding, LLC, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004).

Considered pursuant to this standard, and for the reasons set forth hereinbelow, the Defendant's motion should be **granted**.

6



**Fourth Cause of Action for Violation of § 1981**

In its Fourth Cause of Action, Plaintiff asserts a claim under 42 U.S.C. § 1981. To pursue a claim under § 1981, Plaintiff must prove that the Defendant intended to discriminate against it on the basis of race,[4] and that the discrimination interfered with a contractual interest. Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006). In order to survive Defendant's motion to dismiss and proceed with this claim, Plaintiff's Amended Complaint must set forth sufficient factual matters to state a plausible claim for intentional discrimination based on race, which may be proved either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[5]

Under the framework established by the Supreme Court in McDonnell Douglas, Plaintiff can meet this standard (at least for purposes of a motion to dismiss) through allegations

---

[4] The "race" alleged in the Complaint is Armenian. However, while § 1981 is not applicable to "national origin" claims; see Lee v. Sony BMG Music Entertainment, Inc., 557 F.Supp.2d 418, 424 (S.D.N.Y. 2008)["[N]ational origin-based discrimination claim brought under section 1981 [ ] dismissed with prejudice, because that statute does not cover national origin."]; Plaintiff's identification of "Armenian" as the "race" involved in the Complaint is sufficient for purposes of Plaintiff's § 1981 claim, at least at this stage of the proceedings. See Fonseca v. Sysco Food Sevs. of Arizona, Inc., 374 F.3d 840 (9th Cir. 2004)[While national origin discrimination is not within ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups.]; see also Topadzhilchan v. Glendale Police Dept., No. 10-387, 2010 WL 2740163, at * 5 (C.D.Cal. July 8, 2010) [Finding that Plaintiffs, as Armenian-Americans, were members of an ethnic minority for purposes of a § 1981 discrimination claim.].

[5] Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).

7



sufficient to reasonably infer a prima facie case of discrimination;[6] i.e., by showing that 1) it is a member of a protected class; 2) the Defendants had the intent to discriminate on the basis of race; and 3) the discrimination concerned the making or enforcing of a contract.[7] See Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006); MHANY Management Inc., v. County of Nassau, 843 F.Supp.2d 287, 337 (E.D.N.Y. 2012); see also Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged]. However, when the Plaintiff alleging discrimination in violation of § 1981 is a corporation, as is the case here, certain additional and specified criteria must be met in order for the claim to proceed.[8]

---

[6]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL 6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).

[7]This is the prima facie case for a disparate treatment claim. While Plaintiff also referenced "retaliation" in the body of his Fourth Cause of Action, Plaintiff has not alleged that it engaged in protected conduct or was retaliated against in its factual allegations. See Amended Complaint, ¶ ¶ 7-32. Rather, Plaintiff alleges that the Defendant's alleged non-performance under the contract was due to a racial animus. In its brief opposing the Defendant's motion, Plaintiff also references 42 U.S.C. § § 1983 and 1985, as well as the Fourth and Fourteenth Amendments to the United States Constitution, but provides no indication of how these statutes/amendments relate to its claims. See Plaintiff's Brief, p. 7.

[8]This is assuming that a corporation can even bring a lawsuit under § 1981. However, although there does not appear to be any controlling caselaw on this question in this Circuit, since the greater weight of authority appears to hold that such suits are proper, the undersigned has proceeded with a further discussion of Plaintiff's claim. See generally, New Louisana Holdings, LLC v. Arrowsmith, No. 11-5031, 2012 WL 6061710, at * 6 (N.D.ILL. Dec. 4, 2012) [Discussing generally the question of whether a corporate entity may bring suit under § 1981, and concluding that the
(continued...)



"Circumstances in which a corporate entity may bring suit under Section 1981 include cases in which a corporation in owned entirely by shareholders of a single race, cases in which a corporation has acquired a protected identity pursuant to a government designation, or cases in which a corporation is established for the very purpose of advancing minority interests . . . . Other circumstances in which corporations have been found to have an imputed racial identity are when the owner, majority of shareholders and/or president are members of the specific class that is alleged to have been discriminated against." New Louisana Holdings, LLC, 2012 WL 6061710, at * 6; see also Contemporary Personnel, Inc. v. Godiva Chocolatier, Inc., No. 09-187, 2009 WL 2431461 at * 2 (E.D.Pa. Aug. 6, 2009) ["While courts have adopted the imputed racial identity concept . . . , those courts have only found corporations to have an imputed racial identity when the owner, majority of shareholders and/or president are members of a specific class that is alleged to have been discriminated against."]; cf. Amber Pyramid, Inc. v. Buffington Harbor Riverboats, LLC, 129 Fed.Appx. 292, 295 (7th Cir. 2005) [holding that a "minority-owned corporation, like Amber-Pyramid, assumes an 'imputed racial identity' from its shareholders."]. After careful review and consideration of the allegations of the Amended Complaint in this case, the undersigned finds and concludes that Plaintiff has failed to set forth sufficient factual allegations to give rise to a plausible claim that it has a "racial identity" sufficient to have standing to assert a racial discrimination claim

---

[8](...continued)
greater weight of authority indicates that they can]; Emory Utilities, Inc. v. Time Warner Cable, Inc., No. 09-169, 2010 WL 2402888 at * 2 (E.D.N.C. June 11, 2010) [Minority owned business has standing to pursue claim under § 1981]; cf. Carnell Const. Corp. v. Danville Redevelopment & Housing Authority, 745 F.3d 703, 715 (4th Cir. 2014) [In discussing a Title VI claim, the Court held "that a minority owned corporation may establish an 'imputed racial identity' for purposes of demonstrating standing to bring a claim of race discrimination under federal laws"].



under § 1981, and that this claim should therefore be dismissed. New Louisana Holdings, LLC, 2012 WL 6061710, at * 6; Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

Plaintiff alleges in the Amended Complaint that it "is a foreign corporation organized in the State of Georgia doing business in Charleston County South Carolina", and that it "is a distribution company that distributes oil products to consumers." Amended Complaint, ¶ ¶ 2, 8. However, with respect to a "racial" identity, other than a few extremely general and conclusory allegations in the Complaint, Plaintiff has set forth no allegations to establish a "racial" corporate identity. Plaintiff has not alleged that it is owned entirely by shareholders of a single race, it has not alleged that it has acquired a protected identity pursuant to a government designation (such as being designated a minority-owned business by the Small Business Administration, or some similar type designation), or that it is a corporation established for the very purpose of advancing minority interests. Cf. Amber Pyramid, Inc., 129 F.Appx. at 294 [Corporation wholly owned by minority shareholders can maintain a suit under § 1981]; Thinket, Inc. Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) [Corporate plaintiff entirely owned by African-Americans and certified by the SBA as a minority owned business had standing to bring § 1981]; Hudson Valley Freedom Theater, Inc. v. Heimbach, 671 F.2d 702, 705 (2nd Cir. 1982) [Corporation established for the very purpose of advancing minority interests may bring suit under § 1981]. Rather, Plaintiff only generally and conclusorily alleges that "[t]he owners of the Plaintiff are Armenian". Amended Complaint, ¶ 9; cf. Johnson v. Holder, No. 11-2650, 2012 WL 4587355 at * 1 (D.S.C. Sept. 28, 2012) ["A formulaic recitation of the elements of a cause of action will not do"] quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), adopted by, 2013 WL 314753 (D.S.C. Jan.

10



28, 2013).

This single allegation, with no specifics being provided, standing alone and lacking any factual support, is a quintessential conclusory allegation and is therefore insufficient under Rule 12 to establish a racial identity for this corporate Defendant for purposes of a § 1981 claim. Cf. Carnell Const. Corp., 745 F.3d at 715 [a corporation that *"has been properly certified"* under applicable law as minority-owned can bring a race discrimination claim] (emphasis added).[9] Plaintiff's failure to provide any specific allegations in the Complaint to establish its "racial" corporate identity pursuant to the standards established in the cited caselaw prevents this Court from determining whether Plaintiff has acquired an imputed racial identity for purposes of a § 1981 claim. Cf. Contemporary Personnel, Inc. v. Godiva Chocolatier, Inc., No. 09-187, 2009 WL 2431461, at * 2 (E.D.Pa. Aug. 6, 2009); see House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Conclusory allegations insufficient to maintain claim]; Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976) ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Ashcroft, 556 U.S. at 681 [Allegations that are no more than conclusions are not entitled to the assumption of truth]; cf. Carpenter v. County School Board, 107 F.App'x. 351, 351-352 (4th Cir. 2004) [Claim subject to dismissal where Plaintiff does "nothing more than state that he was in a protected class and that he suffered adverse employment decision"].

Therefore, the Defendants are entitled to dismissal of Plaintiff's Fourth Cause of

---

[9]In this Fourth Circuit decision, the Court determined that the corporation in that case met the requirement of being minority-owned because its "president and sole-shareholder is African-American" and it also had been "certified" as a minority-owned company by the State of Virginia. Id., at 715. No such factual allegations are contained in the Complaint at Bar.



Action alleging a claim under 42 U.S.C. § 1981. Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].[10]

**Remaining State Law Causes of Action**

If the Court adopts the recommendation set forth hereinabove with respect to Plaintiff's sole federal cause of action, the remaining causes of action in this case will be Plaintiff's state law claims for breach of contract, interference with a contractual relationship, and negligent misrepresentation. Defendant contends that if Plaintiff's sole federal cause of action is dismissed,

---

[10]While this may appear to be a harsh ruling in light of the fact that Plaintiff has, at least, alleged that the owners of the Plaintiff "are Armenian", in making the recommendation for dismissal of this cause of action as set forth hereinabove, the undersigned has considered, and is constrained to note, that Plaintiff has been given every opportunity to address and resolve this issue by providing more precise or specific allegations about the ownership or corporate make-up of the Plaintiff, and has failed to do so. In its motion to dismiss Plaintiff's initial complaint, the Defendant specifically cited to Plaintiff's failure to establish a "racial" identity for purposes of bringing a § 1981 claim. See Court Docket No. 10-1, pp. 5-7. However, in its response, Plaintiff failed to even specifically address this issue. Nonetheless, the Court thereafter entered an Order allowing Plaintiff to file an Amended Complaint to address any possible pleading deficiencies before dealing with the issue of dismissal of claims. See Jones v. South Carolina Dep't of Corrections, No. 07-1876, 2009 WL 890646 at * 2 (D.S.C. Mar. 30, 2009)[Allowing Plaintiff the opportunity to file an amended complaint prior to dismissing case]. However, when Plaintiff filed its Amended Complaint, it not only again failed to set out the necessary pleading requirements for this claim, it did not even change this allegation from the original Complaint, and when Defendant then filed a new motion to dismiss (which again specifically raised this particular issue as a ground for dismissal of Plaintiff § 1981 claim), Plaintiff again failed to even address this issue in its response. Rather, Plaintiff generally put forth the argument that it needs "the opportunity to complete discovery in order to provide sufficient evidence as to whether this case should be tried." Plaintiff's Brief, p. 7. Plaintiff does not need discovery from the Defendants to find out its own corporate identity. If Plaintiff meets the prerequisites for pursuing such a claim, it could have (quite simply) pled some specific factual allegations to establish its racial identity. Instead, it continued to provide only a single sweeping and conclusory allegation addressing this critical issue.

In sum, Plaintiff has had every opportunity to address and correct this deficiency in its pleading, and has simply failed to do so despite being specifically placed on notice of the necessary pleading requirements for this claim. In light of this case history, no further opportunity for Plaintiff to correct its pleading is warranted.

12



this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and that these claims should be dismissed.[11]  The undersigned agrees.

Since Plaintiff has asserted no valid federal claim, this Court cannot exercise "supplemental" jurisdiction over Plaintiff's state law claims. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].  Rather, when federal claims presented in a case are

---

[11]The undersigned does note that, in addition to federal question jurisdiction pursuant to Plaintiff's §1981 claim, Plaintiff's complaint also asserts jurisdiction in this Court pursuant to diversity jurisdiction. Amended Complaint, ¶ 1.  However, the federal diversity statute requires complete diversity of parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332(a).  Complete diversity of parties in the case means that no party on one side may be a citizen of the same state as any party on the other side. See Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 372-374 (1978).  Here, both the corporate Plaintiff and the corporate Defendant are alleged to be Georgia corporations.  Therefore, there is no diversity between these two parties. Kimball v. Rajpal, 566 F.Appx. 261, 262 (4th Cir. 2014) ["If one defendant is a citizen of the same state as the plaintiff, complete diversity is nonexistent, and federal jurisdiction will not lie"]; see also 28 U.S.C. § 1332(c)(1) [stating that corporation is deemed a citizen of state in which it is incorporated and state in which it has principal place of business].  Further, even if plaintiff is attempting to base diversity jurisdiction on the fact that John Gordon (alleged to be a resident of South Carolina) is named as a Defendant in his individual capacity, Gordon appears to only be a proper party Defendant under Plaintiff's § 1981 cause of action, which has been recommended for dismissal.  Plaintiff has provided no factual allegations in the Complaint whatsoever to establish that Gordon is a proper party Defendant in his individual capacity under any of Plaintiff's state law contract-based claims.  Plaintiff's contract was with the corporate Defendant, Delfin Group, not with Gordon individually.  Skeens v. Alpha Natural Resources, Inc., ___ Fed.Appx. ___, 2014 WL 4628478 at * 1 (4th Cir. Sept. 17, 2014) [Plaintiff bears the burden of proving the existence of subject matter jurisdiction.] (citing Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md., 523 F.3d 453, 459 (4th Cir. 2008)).  Even so, Gordon's presence in this case does not change the fact that both corporate parties are legal residents of Georgia.  28 U.S.C. § 1332(a)(1) [requiring complete diversity]; see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) [The Supreme Court has "consistently interpreted §1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence is the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."]. Additionally, Gordon is now apparently a resident of New Jersey.  See Court Docket No. 21-1.  See also, n. 1, supra.

13



dismissed, any remaining state law claims are subject to dismissal in order to allow for state court resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Mellon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996); see also Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 387 (1998); see 28 U.S.C. § 1367(a).

Dismissal of Plaintiff's state law claims, without prejudice, will not only allow the Plaintiff to obtain a ruling as to the viability of these state law claims from a more appropriate forum, but if these claims were to survive summary judgment, it would be much more appropriate for these state law claims to be tried in state court. Lee v. Singleton, No. 11-2983, 2012 WL 1896062 at * * 18-20 (D.S.C. Jan. 9, 2012)[dismissing and remanding unrelated state law claims where they were not related to a federal claim], adopted by, 2012 WL 1895998 (D.S.C. May 24, 2012); see also Singh v. New York State Dep't of Taxation & Finance, No. 06-299, 2011 WL 3273465 at * * 20-21 (W.D.N.Y. July 28, 2011), adopted by, 865 F.Supp. 2d 344 (W.D.N.Y. Oct. 25, 2011).  Dismissal of these state law claims would also not prejudice the Plaintiff, as the parties could seek a fast track for resolution of these claims at the state level; See Rule 40(c), S.C.R.Civ.P.; and there are no statute of limitations problems because federal law provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards.  See 28 U.S.C.A. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, et al., 204 F.3d 109, 123-124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"];



cf. National Federation of Independent Business v. Sebelius, 132 S.Ct. 2566, 2592 (2012).

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's Fourth Cause of Action asserting a violation of 42 U.S.C. § 1981 be **grante**d, and that that cause of action be **dismissed**, with prejudice. Plaintiff's remaining state law causes of action should then be **dismissed**, without prejudice, in order to allow Plaintiff to pursue these claims in state court, if it desires to do so.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 16, 2014
Charleston, South Carolina

15



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

